### Ellen Smith

*v.*

### Elizabeth M. Dennison.

*Filed at Ottawa November 17, 1884.*

1. PAROL EVIDENCE—*to identify what is supposed to pass by will.* For the purpose of determining the subject of disposition by will, or the quantity of land intended to be given, the court may inquire into every material fact relating to the property which is claimed as the subject of disposition, to enable it to identify the thing intended to be devised by the testator, or the quantity of interest he has given by his will.

2. So where the owner of a half section of land had conveyed forty acres of the south quarter, and he devised twenty acres more of the same, and then gave the north quarter to a daughter, subject to a life estate in his widow, and one hundred acres (being the residue unsold and not devised, of the south quarter,) to another daughter, it was *held,* error to exclude evidence showing that the testator had adopted a line between the two quarters as the true one, whether correct or not, as tending to show that the devise was made in accordance with such adopted line.

3. Devise—*description—presumption as to quantity of land devised.*
Where a testator devises a quarter section of land, except sixty acres thereof,
the devise will *prima facie* embrace all the land in such quarter section
included in the government survey, except the sixty acres; but such pre-
sumption is not conclusive. It may be shown that prior to the devise the
testator had adopted a corner between this and an adjoining tract, in which
event the devise will be limited to the number of acres in the tract according
to such adopted boundary line.

Appeal from the Circuit Court of Warren county; the Hon.
S. P. Shope, Judge, presiding.

Mr. James M. Davidson, and Messrs. Williams & Lawrence,
for the appellant:

The adoption of a line between the two quarters, by the
testator, may be shown, to identify what was intended by the
devise. 3 Greenleaf's Cruise on Real Prop. 200, 175, 227;
2 Story's Eq. Jur. sec. 1074; 1 Redfield on Wills, 436, 437;
*Doran* v. *Mullen,* 78 Ill. 342; *Kennedy* v. *Kennedy,* 105 id.
350; *Blanchard* v. *Maynard,* 103 id. 60; *Updike* v. *Tompkins,*
100 id. 406; *Caruthers* v. *McNeill,* 97 id. 256; *Welsch* v.
*Belleville Savings Bank,* 94 id. 191.

Messrs. Grier & Dryden, for the appellee:

Where land is conveyed by government description, or by
metes and bounds, or other definite description, and the mon-
uments and boundaries can be ascertained, these control and
are to be regarded, rather than quantity. *McEvoy* v. *Lloyd,*
31 Wis. 185; *Jackson* v. *Barringer,* 15 Johns. 472; *Mann* v.
*Pearson,* 2 id. 43.

Quantity is the least certain element of description, and if
inconsistent with established boundaries, must be rejected.
Washburn on Real Prop. p. 669, sec. 39; *Cottingham* v. *Parr,*
93 Ill. 233.

"Sixty-three acres, being the south-east quarter," etc., was
held to convey all the land in that quarter, although greatly
in excess of that named. (*Kruse* v. *Scripps,* 11 Ill. 103.) So

where land is described as the part of a certain survey remaining after a prior conveyance, such residue will pass, although the metes and bounds given in the deed do not include it. *Ragsdale* v. *Robinson,* 48 Texas, 380.

A description of land by numbers of sections, makes the plats and field notes of the public surveys a part of the description. *McClintock* v. *Rogers,* 11 Ill. 279.

The four corners of section 2 are known and recognized government corners, and the north-east and south-east corners being known, the law prescribes the method by which the quarter corner on the line between 1 and 2 shall be established, viz: "All quarter corners upon boundaries of fractional sections must be set at points between known corners, proportionate to distances in original field notes." *Colvin* v. *Fell,* 40 Ill. 318; *Martz* v. *Williams,* 67 id. 306; *Neff* v. *Paddock,* 26 id. 551; *Prentiss* v. *Brewer,* 17 Wis. 661; *Jones* v. *Kimball,* 19 id. 452.

If original monuments can be found, they must govern, and they must be looked for at the tract or lot in dispute, and if none can be found there, then more distant ones may be resorted to from which to make the survey and measurement. *McClintock* v. *Rogers,* 11 Ill. 279; *Manley* v. *Gibson,* 13 id. 308; *Martz* v. *Williams,* 67 id. 306; *Nye* v. *Bennett,* 44 Wis. 104; *Marsh* v. *Mitchell,* 25 id. 706.

Mr. Justice Sheldon delivered the opinion of the Court:

This was an action of ejectment, brought by Elizabeth M. Dennison, against Ellen Smith, to recover the possession of a strip of land claimed to lie on the north part of the south-east quarter of section 2, in township 11, north of range 2, west of the fourth principal meridian, situated in Warren county. Both parties claim title under the will of Norman Buck, their father. Norman Buck in his lifetime was the owner of the east half of said section 2,—the north-east

quarter containing, according to government survey, $154\frac{66}{100}$ acres, and the south-east quarter 160 acres. He had conveyed 20 acres in the south-west corner of the south-east quarter, and also 20 acres in the south-east corner of the south-east quarter. By his will, dated September 20, 1856, he devised to his daughter Emily Buck 20 acres in the northwest corner of the south-east quarter; to his daughter Ellen Buck, now Ellen Smith, the defendant, he devised the northeast quarter of said section 2, subject to a life estate in his wife; to his daughter Elizabeth M. Buck, now Elizabeth M. Dennison, the plaintiff, he devised the west half of the southwest quarter of section 1, also 100 acres, being the residue unsold and not bequeathed of the said south-east quarter; and to his wife, Maria Buck, he devised a life estate in the north-east quarter given to his daughter Ellen. Norman Buck died in October, 1856, and his wife in July, 1881. In 1871 a survey and measurement of said east half section were made by Thomas S. McLannahan, county surveyor, by which it was found that the half section contained a surplus beyond what was shown by the government survey, of $14\frac{87}{100}$ acres, and by an admeasurement according to established government corners, the true line, as determined by the county surveyor, was fixed between said quarters, and the surplus divided *pro rata* between them,—$10\frac{68}{100}$ acres being allotted to the north-east quarter, and $4\frac{17}{100}$ acres to the southeast quarter,—increasing the north-east quarter to $165\frac{53}{100}$ acres, and the south-east quarter to $164\frac{17}{100}$ acres. This action was brought to recover the possession of that portion of such surplus which lies north of the 100-acre tract, or between the "old turn-row" fence, as called, and the line established by McLannahan in 1871. The verdict and judgment were in favor of the plaintiff, and the defendant appealed.

The exclusion of the eighth interrogatory, and the answer thereto, in the deposition of John M. Owens, taken on behalf of the defendant, is assigned as error. It appeared from the

evidence, that at one time Owens owned and resided on the
adjoining north-west quarter of section 1, in the same town-
ship and range, while Norman Buck owned the east half of
said section 2, and the south-west quarter of said section 1.
The excluded testimony was to the effect that there was a
double fence between Owens' and Buck's land, both on the
west and south sides of Owens' land; that Buck came to
Owens and said it was useless to keep up separate fences, and
proposed to have the lines established between them, and by
consent of Owens, Buck procured the services of Paddock,
the county surveyor, for the purpose.   Paddock made the
survey, finding what he thought to be the proper corner, and
the result of the survey showed Owens to have 10 or 12 acres
more land than his deed called for; that Buck proposed they
should divide the surplus between them, but Owens said they
had agreed to leave the whole matter with the surveyor, and
he meant to do so; that "Mr. Buck said, at that time, our
children should not quarrel over the division line, and that
he would plant a rock to mark the corner, and there it must
remain.   He (Buck) wanted to commence right away to move
the fences on to the line," etc. · This corner was on the east
line of Buck's land.   There was testimony that by Paddock's
survey the land in dispute was on the north-east quarter of
section 2.  We are of opinion the court erred in the exclu-
sion of this offered testimony,—not because of its tending to
show that the corner established by Paddock was the true
corner, but because of its tendency to show what was the
land which was devised to defendant under the description of
the north-east quarter of section 2.  *Prima facie,* it would be
the land which would be found by the government survey to
be included in that description, but not conclusively so, we
think.   We understand, from the evidence, that the trans-
action spoken of by Owens occurred in 1848,—a long time
before the making of the will.   Now, if by agreement with
Owens, the owner of the adjoining north-west quarter of sec-

tion 1, the testator, long before making his will, had established this corner as the south-east corner of the north-east quarter of section 2, and had ever after, as there is evidence tending to show, recognized and adopted this as the true corner, it would tend to show what were the lands which he intended to devise, respectively, to these two daughters, by the descriptions which he used,—that the land described as the north-east quarter of section 2 was land whose south-east corner was this established corner, and that the line produced from this corner was the division line between these two quarters, the north-east and south-east, which he devised to his daughters. Of the south-east quarter the testator had previously conveyed away 40 acres off from the south side; by the will he devised to another daughter 20 acres more in the north-west corner of the quarter, and then devises to the plaintiff "100 acres, being the residue remaining unsold and not bequeathed of the south-east quarter of section 2." Taking this established corner as the true one, would leave just 100 acres, as we understand, remaining in the south-east quarter for plaintiff to take; and the establishment of this corner would tend to show that it was 100 acres, and no more, that he intended to devise to the plaintiff—that it was the quantity of land which would be given by the adoption of this corner, and not the larger quantity than that, which would be given by taking a different corner further north; that the devise was in view of the adopted corner, and that it was the intention in the devise that such adopted corner should be taken and held as for the true corner between the lands, and as carrying the area and quantity of land which would thereby be given. It is the intention of the testator, we think, that should control in finding what was the particular land which passed under the description he used.

The fifth proposition laid down by Vice Chancellor Wigram in his treatise on the rules of law respecting the admission of extrinsic evidence in aid of the interpretation of wills, is as

follows: "For the purpose of determining the object of the testator's bounty, or the subject of disposition, or the quantity intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will. The same, it is conceived, is true of every other disputed point respecting which it can be shown that a knowledge of extrinsic facts can in any way be made auxiliary to the right interpretation of a testator's words." Wigram on Wills, 142.

For error in the exclusion of this testimony the judgment will be reversed and the cause remanded.

*Judgment reversed.*